**Case Nos. 23-2081, 23-2302, 23-2377**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC,**

Petitioner - Cross-Respondent

v.

**NATIONAL LABOR RELATIONS BOARD,**

Respondent - Cross-Petitioner

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS,**

Petitioner-Intervenor

ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR
ENFORCEMENT OF DECISION OF THE NLRB

**REPLY BRIEF FOR PETITIONER/CROSS-RESPONDENT
CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC**

Ross M. Gardner
Alan M. Bayless Feldman
Ross.gardner@jacksonlewis.com
Alan.feldman@jacksonlewis.com
JACKSON LEWIS, P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Telephone: 402.391.1991
Facsimile: 402.391.7363

*Attorneys for Petitioner/Cross-Respondent CEMEX Construction Materials Pacific, LLC*

Maurice Baskin, Esq.
mbaskin@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W., Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011

John Harper III
ajharper@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney St., Suite 1900
Houston, Texas 77010
Telephone: 713.951.9400

## <u>TABLE OF CONTENTS</u>

PAGE

SUMMARY OF ARGUMENT ..................................................................1

ARGUMENT ........................................................................................2

I. THE BOARD'S ORDER MUST BE DENIED ENFORCEMENT BECAUSE THE ALJ'S REMOVAL PROTECTIONS WERE UNCONSTITUTIONAL. ...........................2

II. NEITHER PRECEDENT NOR SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF SECTION 8(A)(1) VIOLATIONS PREDATING THE UNION ELECTION .................4

    A. CEMEX Did Not Violate the NLRA Through Comments About Converting a Plant to "Satellite Status" ........................4

    B. CEMEX Did Not Violate the NLRA Through Statements About Delays of Wage Increases ...............................................5

    C. CEMEX Did Not Violate the NLRA Through Comments About Strikes ..............................................................................6

    D. CEMEX Did Not Violate the NLRA Through Comments About Batching Concrete ...........................................................7

    E. CEMEX Did Not Violate the NLRA by Promulgating a Rule Prohibiting Employees From Talking to Union Organizers on Company Time or Issuing Employee Ornelas a Verbal Warning .......................................................7

    F. CEMEX Did Not Violate the NLRA or Engage in Objectionable Conduct by Hiring Security Guards ..................8

III. THE BOARD ERRED IN SETTING ASIDE THE ELECTION RESULTS BECAUSE VIOLATIONS WERE NOT WIDELY DISSEMINATED ..............................................................................10

IV. CEMEX DID NOT VIOLATE THE NLRA WHEN IT DISCIPLINED AND TERMINATED ORNELAS MONTHS AFTER THE UNION LOST THE ELECTION ...............................11

i

A.      Ornelas' Suspension Did Not Violate the NLRA ..................11

B.      Ornelas' Termination Did Not Violate the NLRA .................12

V.     THE BOARD IMPROPERLY IMPOSED COMPENSATORY DAMAGES NOT AUTHORIZED BY THE ACT ...........................14

VI.     THE BOARD'S *GISSEL* BARGAINING ORDER REMAINS CONTRARY TO *GISSEL* ..................................................17

VII.    THE BOARD IMPROPERLY ANNOUNCED AND RETROACTIVELY APPLIED AN UNWORKABLE NEW STANDARD THAT UNLAWFULLY IMPOSES PETITION REQUIREMENTS AND BARGAINING ORDERS ON EMPLOYERS ...................................................................20

A.      The New Standard Violates the NLRA ...................................21

B.      The Board Erred in Overruling Its Decision in *Linden Lumber* ........................................................................24

C.      The Major Questions Doctrine Precludes the New Standard ........................................................................25

D.      The Board Improperly Engaged in Rulemaking Under the Guise of Adjudication ............................................................27

E.      The Board Erred in Applying Its New Standard Retroactively ........................................................................28

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE ....................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ship Bldg. v. NLRB,*
    380 U.S. 300 (1965)................................................................20

*Atlas Roofing Co. v. OSHRC,*
    430 U.S. 442 (1977)................................................................16

*Califano v. Sanders,*
    430 U.S. 99 (1977)..................................................................2

*Central Nat'l Gottesman, Inc.,*
    303 NLRB 143 (1991) .............................................................6

*CFPB v. CashCall, Inc.,*
    35 F.4th 734 (9th Cir. 2022) ...................................................3

*City of Arlington v. FCC,*
    569 U.S. 290 (2013)................................................................3

*Coffman v. Queen of Valley Med. Ctr.,*
    895 F.3d 717 (9th Cir. 2018) .................................................29

*Collins v. Yellin,*
    141 S. Ct. 1761 (2021)............................................................3

*Construction Erectors, Inc. v. NLRB,*
    661 F.2d 801 (9th Cir. 1981) .................................................29

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ...............................................3, 4

*Exelon Generation Co.,*
    347 NLRB 815 (2006) .............................................................7

*First Legal Support Services,*
    342 NLRB 350 (2004) .............................................................9

*Framan Mechanical Inc.*,
343 NLRB 408 (2004) ...................................................................13

*Frankl v. HTH Corp.*,
650 F.3d 1334 (9th Cir. 2011) ..................................................24, 25

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010).........................................................................3

*Gardner Mech. Servs. v. NLRB*,
115 F. 3d 636 (9th Cir. 1997)………………………………………17,19

*Golden State Bottling Co. v. NLRB*,
414 U.S. 168 (1973)........................................................................15

*Indep. Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) ..........................................................15

*Int'l Union v. NLRB*,
834 F.2d 816, 819 (9th Cir. 1987)…………………………………….17

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) .............................................................4

*Lechmere Inc. v. NLRB*,
502 U.S. 527 (1992).....................................................................9, 11

*Linden Lumber Div., Sumner & Co. v. NLRB*,
419 U.S. 301 (1974).....................................................23, 24, 25, 27

*Local Joint Exec. Bd. of Las Vegas v. NLRB*,
309 F.3d 578 (9th Cir. 2002) ..........................................................21

*MacDonald Machinery Co.*,
335 NLRB 319 (2001) ......................................................................9

*Marine Welding & Repair Works, Inc.*,
174 NLRB 661 (1969) ......................................................................8

*Mid-Mountain Foods, Inc.*,
350 NLRB 742 (2007) ....................................................................13

*Nat'l Micronetics, Inc.*,

iv

277 NLRB 993 (1985) ...................................................................9

*Newburg Eggs, Inc.*,
357 NLRB 2191 (2011) ...............................................................9

*NLRB v. Advanced Sys.*,
681 F.2d 570 (9th Cir. 1982) .....................................................10

*NLRB v. Ampersand Publ'g, LLC*,
43 F.4th 1233 (9th Cir. 2022) ...................................................15

*NLRB v. Bakers of Paris*,
929 F.2d 1427 (9th Cir. 1991) ...................................................20

*NLRB v. Bell Aerospace Co.*,
416 U.S. 267 (1974) ...................................................................27

*NLRB v. Buckley Broad. Corp. of Cal.*,
891 F.2d 230 (9th Cir. 1989) .....................................................29

*NLRB v. CAM Indus. Inc.*,
666 F.2d 411 (9th Cir. 1969) .....................................................25

*NLRB v. Davis*,
642 F.2d 350 (9th Cir. 1981) .....................................................19

*NLRB v. Fant Milling*,
360 U.S. 301 (1959) .....................................................................7

*NLRB v. Jamaica Towing, Inc.*,
632 F.2d 208 (2d Cir. 1980) .......................................................18

*NLRB v. Ky. River Cmty. Care, Inc.*,
532 U.S. 706 (2001) ...................................................................21

*NLRB v. L.B. Foster Co.*,
418 F.2d 1 (9th Cir. 1969) .........................................................25

*NLRB v. Peninsula Ass'n*,
627 F.2d 202 (9th Cir. 1980) .....................................................20

*NLRB v. St. Francis Hosp. of Lynwood*,
601 F.2d 404 (9th Cir. 1979) .....................................................27

v

*NLRB v. Western Drug*,
  600 F.2d 1324 (9th Cir. 1979) ............................................................. 19

*Pollard v. E.I. du Pont de Nemours & Co.*,
  532 U.S. 843 (2001) ............................................................................ 16

*Quest Int'l*,
  338 NLRB 856 (2003) ........................................................................... 8

*Regal Knitwear Co. v. NLRB*,
  324 U.S. 9 (1945) ................................................................................ 15

*Reid v. Engel*,
  765 F.2d 1457 (9th Cir. 1985) ............................................................... 2

*SEC v. Jarkesy*,
  No. 22-859 (argued Nov. 29, 2023) .................................................... 2, 4

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) .......................................................................... 3

*St. Francis Hospital*,
  263 NLRB 834 (1982) ........................................................................... 9

*State Farm v. Campbell*,
  538 U.S. 408 (2003) ............................................................................ 15

*Thryv, Inc.*,
  372 NLRB No. 22 (2022), *pet. for review pending* ............................... 14, 15, 16

*U.S. v. LA Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) ............................................................................... 2

*UAW v. NLRB*,
  834 F.2d 816 (9th Cir. 1987) ............................................................. 4, 5

*UAW-CIO v. Russell*,
  356 U.S. 634 (1958) ....................................................................... 15, 16

*United States v. Burke*,
  504 U.S. 229 (1992) ....................................................................... 15, 16

vi

*Universal Camera Corp v. NLRB,*
340 U.S. 474 (1951)...................................................................17, 19

*Util. Air Regulatory Grp. v. EPA,*
573 U.S. 302 (2014).................................................................25, 26

*Va. Elec. Power Co. v. NLRB,*
319 U.S. 533 (1943).................................................................15, 16

*NLRB v. Jones & Laughlin Corp.,*
301 U.S. 1 (1937)............................................................................16

*W.E. Carlson Corp.,*
346 NLRB 431 (2006) ....................................................................5

*Wismettac Asian Foods, Inc. v. NLRB,*
2022 U.S. App. LEXIS 2972 (9th Cir. Feb. 2, 2022) ....................8, 9

*Zumwalt v. Nat'l Steel & Shipbuilding Co.,*
796 Fed. App'x 930 (9th Cir. 2019) .............................................2, 3

**Statutes**

5 U.S.C. § 1202 ................................................................................4

5 U.S.C. § 7521 ................................................................................4

5 U.S.C. § 151 ..........................................................................*passim*

**Other Authorities**

FED. R. APP. 36-3(a)........................................................................3

U.S. Const. amend. VII....................................................14, 15, 16

U.S. Const. art. I..............................................................................2

## SUMMARY OF ARGUMENT

The briefs of the General Counsel and the Union fail to justify the Board's errors in upholding the ALJ's unfair labor practice ("ULP") findings, as identified in CEMEX's opening brief. Moreover, neither the General Counsel nor the Union provide any meaningful support for the Board's *reversal* of the ALJ on a central issue in this case: Whether substantial evidence justified the Board's imposition of a bargaining order without adequate proof that the alleged unfair labor practices were so *severe and pervasive* as to justify disenfranchisement of the voting majority of employees under this Court's precedents, absent proof of dissemination of the ULPS to the widely dispersed bargaining unit.

Having failed to justify the Board's departure from the Supreme Court's *Gissel* bargaining standard in this regard, the opposing briefs likewise fail to support the Board's *sua sponte* adoption of an unprecedented new bargaining order standard, in defiance of the Supreme Court's *Gissel* holding and other longstanding precedent, all in violation of the NLRA and the APA. The Board's sweeping and unworkable new standard should therefore be struck down as an unlawful transgression on judicial and Congressional authority. For these and other constitutional and statutory grounds discussed in CEMEX's opening brief, and further explained below, this Court should grant CEMEX's Petition for Review and deny the Board's Cross-Application for Enforcement.

1

## ARGUMENT

**I.**      **THE BOARD'S ORDER MUST BE DENIED ENFORCEMENT BECAUSE THE ALJ'S REMOVAL PROTECTIONS WERE UNCONSTITUTIONAL.**

In its Opening Brief, CEMEX explained why this Court should await the Supreme Court's decision in *SEC v. Jarkesy*, No. 22-859 (argued Nov. 29, 2023), because *Jarkesy* will likely decide whether the removal protections afforded to NLRB ALJ's violate Article II of the U.S. Constitution. (CEMEX Br. 11-13). In response, the GC contends CEMEX waived its constitutional argument by not raising it to the Board, citing *U.S. v. LA Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) and *Zumwalt v. Nat'l Steel & Shipbuilding Co.*, 796 Fed. App'x 930 (9th Cir. 2019). (GC Br. 15-16). But this Circuit considers constitutional challenges to an agency's enforcement scheme even when the party has not first presented such challenges to the agency. *See Reid v. Engel*, 765 F.2d 1457, 1461 (9th Cir. 1985); *see also Califano v. Sanders*, 430 U.S. 99, 109 (1977).[1]

---

[1] *LA Trucker* and *Zumwalt* do not help the GC. In *LA Trucker*, the Supreme Court faulted a party for failing to raise a statutory (not a constitutional) claim. *See LA Trucker*, 344 U.S. at 35 (claiming only that appointment was improper under the APA). In *Zumwalt*, although this Court concluded no exceptional circumstance applied to an argument a party did not present to an agency below, the Court did not specifically analyze whether the party presented an exceptional circumstance by raising a constitutional challenge to an ALJ's appointment; rather, *Zumwalt* only addressed the party's argument about excusable neglect. *See Zumwalt*, 796 Fed. App'x at 932. In any event, *Zumwalt* was a non-precedential unpublished decision.

The GC next contends CEMEX has not shown it was harmed by any constitutional defect in the ALJ removal protections, citing *Collins v. Yellin*, 141 S. Ct. 1761 (2021), *CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022) and *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021) (GC Br. 16). But other than providing a few examples where agency removal restrictions would "cause harm," the *Collins* Court, and this Court in *CashCall, Inc.*, did not outline a controlling test for harm. *See Collins*, 141 S. Ct. at 1789; *CashCall, Inc.*, 35 F.4th at 742-43; *see also Decker*, 8 F.4th at 1137. In contrast, CEMEX has demonstrated that an unconstitutional removal process casts doubt on the ALJ's decision making process such as to "inflict[] a 'here-and-now' injury … that can be remedied by a court."[2] *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020).

The GC further contends ALJ removal protections are constitutional because ALJs perform "purely adjudicatory" functions. (GC Br. 17). But agency adjudications "under our constitutional structure...must be exercises of...the 'executive power.'" *See City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013); *see*

---

*See id.* at 931 n.*; *see also* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent.").

[2] That removal restrictions could alter the ALJ's decision-making processes "cannot be ruled out." *See Collins*, 141 S. Ct. at 1789; *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 479 (2010) ("[L]ayers of good-cause tenure" create "a diffusion of accountability").

3

*also Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022). Even if ALJs' functions are mostly adjudicatory, *Decker* is not on point, as it authorized ALJs' *two-level* removal protections. *See Decker*, 8 F.4th at 1136. Here, the NLRB ALJ enjoyed three-level removal protections: the Board may only remove ALJs if the Merit Systems Protection Board ("MSPB") finds good cause, and members of both the Board and MSPB are removable only for cause. 5 U.S.C. § 7521; 5 U.S.C. § 1202(c); 29 U.S.C. § 153(a). Accordingly, the Court must deny enforcement of the Board's order or, at a minimum, wait until the Supreme Court decides *Jarkesy*.

## II. NEITHER PRECEDENT NOR SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF SECTION 8(A)(1) VIOLATIONS PREDATING THE UNION ELECTION

### A. CEMEX Did Not Violate the NLRA Through Comments About Converting a Plant to "Satellite Status"

In its Opening Brief, CEMEX explained it did not violate the NLRA when VP/GM Bryan Forgey discussed the possibility of converting a CEMEX plant to "satellite status," as the Board's reasoning ignored the GC's burden of proof and deviated from the ALJ's reasoning. (CEMEX Br. 15-17). In response, the GC points to statements from CEMEX about satellite plants going "dormant" or "dark" (GC Br. 25). But missing from the GC's analysis is any reference to record evidence showing satellite plants would cause job losses or transfers. (1-ER-13).

The GC's reliance on *UAW v. NLRB*, 834 F.2d 816 (9th Cir. 1987) for the

4

premise that employees are sensitive to threats of plant closing compels no different result. (GC Br. 24-25). There, the employer said "unionization would deprive [the company] of the versatility it needed to survive." *See UAW*, 834 F.2d at 820. CEMEX's statement about satellite status is not analogous. *See id.* The Court should not enforce the Board's finding that Forgey's statement about satellite plants violated the NLRA.

### B. CEMEX Did Not Violate the NLRA Through Statements About Delays of Wage Increases

In its Opening Brief, CEMEX also showed that Forgey did not violate the NLRA by implying unionization could delay wage increases; rather, Forgey lawfully explained how collective bargaining works. (CEMEX Br. 17). In response, the GC claims Forgey's statements implied CEMEX could stop wage increases it had a past practice of granting. (GC Br. 22). The GC is wrong: Forgey said wages were in a "status quo" position, consistent with the GC's description of CEMEX's obligation to "maintain its status quo practice of granting annual wage increases."[3] (1-ER-83; GC Br. 22). The Court should not enforce the Board's finding that Forgey's statement about wages violated the NLRA.

---

[3] This case is unlike *W.E. Carlson Corp.*, 346 NLRB 431 (2006) (GC Br. 22); there, the employer (unlike Forgey) said "wages were frozen until after the union election." *See W.E. Carlson Corp.*, 346 NLRB at 433.

### C. CEMEX Did Not Violate the NLRA Through Comments About Strikes

The GC contends CEMEX violated the NLRA through misleading comments about the rights of economic versus ULP strikers, citing *NLRB v. Murray Prods., Inc.*, 584 F.2d 934 (9th Cir. 1978) (GC Br. 23). Although that case outlines striker reinstatement rights, CEMEX properly outlined reinstatement rights when it explained the difference between economic and ULP strikes and provided NLRB-published documents explaining the difference. (CEMEX Br. 19-20). The GC contends Forgey erred in suggesting a seniority provision could disadvantage certain employees, citing *Int'l Harvester Co.*, 258 NLRB 1162 (1981). (GC Br. 23). But, as CEMEX explained, Forgey's comment was lawful because he was sharing his personal experience during a strike while working for another employer, which Section 8(c) permits. (CEMEX Br. 18-19). Accordingly, the Court should not enforce the finding Forgey's statement about strikes violated the NLRA.[4]

---

[4] The GC argues Forgey communicated the same unlawful statement to employees at other plants (GC Br. 23), but the record does not reflect employees from any other plants heard the statements, even though 21 drivers testified. (CEMEX Br. 21). CEMEX is not trying to imply employees denied hearing statements about striker replacement rights. (*Contra* GC Br. 24). CEMEX merely emphasizes no employees other than Ornelas accused Forgey of such unlawful statements. It was not CEMEX's burden to cross-examine drivers. (*Contra* GC Br. 24). Rather, it was the GC's burden to prove Forgey made unlawful statements across multiple plants. *See Central Nat'l Gottesman, Inc.*, 303 NLRB 143, 145 (1991).

### D.    CEMEX Did Not Violate the NLRA Through Comments About Batching Concrete

In its Opening Brief, CEMEX argued that manager Faulkner did not violate the NLRA when he stated he might lose the ability to teach certain skills to employees if a union came. (CEMEX Br. 21-22). In response, the GC repeats the Board's arguments and contends employers may not predict adverse consequences from unionization without supporting objective facts.[5] (GC Br. 25). But again, Faulkner was lawfully sharing his personal experience. (CEMEX Br. 21-22). The Court should not enforce the finding Faulkner's statement violated the NLRA.

### E.    CEMEX Did Not Violate the NLRA by Promulgating a Rule Prohibiting Employees From Talking to Union Organizers on Company Time or Issuing Employee Ornelas a Verbal Warning[6]

In its Opening Brief, CEMEX explained it did not promulgate any unlawful solicitation rule, as the record did not show CEMEX instructed anyone against speaking with Union organizers other than one employee – Ornelas – and the Board

---

[5] The GC relies on *Exelon Generation Co.*, 347 NLRB 815, 830 (2006) where an employer violated the NLRA when it "made it clear...one result of selecting the Union would be a change" in schedule. *See id.* But Faulkner described events that "might" (per the Board) occur. (*See* 1-ER-14; CEMEX Br. 22).

[6] In its Opening Brief, CEMEX explained the allegations about CEMEX promulgating a rule and issuing Ornelas a warning were untimely. (CEMEX Br. 22-23). The GC contends the Union's broad ULP charge about coercive behavior somehow encompassed the allegations. (GC Br. 26). But by that reasoning, the Union's broad charge about coercive behavior could have encompassed *any ULP*— even though the Board is not "to be left carte blanche" to expand or ignore charges. *See NLRB v. Fant Milling*, 360 U.S. 301, 309 (1959).

erred in relying on uncredited testimony. (CEMEX Br. 23). In response, the GC contends statements from Ornelas, Charlson, and Faulkner support the Board's finding. (GC Br. 27). But the GC is wrong—the ALJ did not rely on the testimony of Ornelas or Charlson; and Faulkner's written statement indicated CEMEX lawfully warned against talking with the Union during work time, not "company time." (1-ER-15; 3-ER-445). Accordingly, the Court should not enforce the Board's findings about CEMEX promulgating a "rule" or Ornelas' verbal warning.

### F. CEMEX Did Not Violate the NLRA or Engage in Objectionable Conduct by Hiring Security Guards

In its Opening Brief, CEMEX showed that the Board erred in finding it violated Section 8(a)(1) by using security guards before the election, as the GC did not satisfy due process requirements. (CEMEX Br. 25-26). The GC essentially reiterates arguments CEMEX already addressed. (GC Br. 28-29; CEMEX Br. 25-27). CEMEX further explained its use of guards was lawful.[7] (CEMEX Br. 27-30). The GC disagrees, citing *Beverly Cal. Corp. v. NLRB*, 227 F.3d 817 (2000) (GC Br. 28), which CEMEX addressed (CEMEX Br. 29).[8] The GC further cites *Wismettac*

---

[7] The GC claims that *Quest Int'l*, 338 NLRB 856 (2003), on which CEMEX relied (CEMEX Br. 29-30), does not apply because the presence of guards was the only objection at issue (GC Br. 30). But the Board explained the guards did not interfere with employee free choice. *See Quest*, 338 NLRB at 857.

[8] The GC cites *Marine Welding & Repair Works, Inc.*, 174 NLRB 661 (1969), where guards interfered with employee access to voting, unlike here, where the ALJ

*Asian Foods, Inc. v. NLRB*, 2022 U.S. App. LEXIS 2972 (9th Cir. Feb. 2, 2022) (GC Br. 30) where the employer stationed guards outside a warehouse entrance and stated it would not allow the Union in. *See id.* at *6. The *Wismettac* decision is clearly distinguishable and should not be applied, as the GC has not alleged similar facts in the present case. Accordingly, the Court should not enforce the Board's findings about guards.

### G. Other Claimed Violations Not Found By The Board Provide No Grounds to Uphold the Board's Decision.

The brief of the Teamsters Union (U. Br. I) challenges the Board's findings relating to an allegedly unlawful promise by CEMEX, a video by CEMEX, captive audience meetings, alleged statements about the impacts of unionization, and the Board's decision against ordering union access remedies. (U. Br. i). The Board did not rely on these claims, so they provide no basis for upholding the Board's order against CEMEX. In any event, the Union's claims are also unsupported by the record. [9]

_____

dismissed allegations about guards blocking voting. *See id.* at 671; (CEMEX Br. 25-26).

[9] The video, as described by the Union, reveals no violation; rather, it was permissible campaign speech. (*See* U. Br. 6); *Macdonald*, 335 NLRB at 319; *see also Nat'l Micronetics, Inc.*, 277 NLRB 993, 993 (1985); *Newburg Eggs, Inc.*, 357 NLRB 2191 (2011). Captive audience meetings and CEMEX's statements about the impact of unionization complied with controlling law. (GC Br. 38-39). Access remedies are unwarranted when other remedies respond to ULPs, like here. *See First*

## III.     THE BOARD ERRED IN SETTING ASIDE THE ELECTION RESULTS BECAUSE VIOLATIONS WERE NOT WIDELY DISSEMINATED[10]

In its Opening Brief, CEMEX asserted the election should not have been set aside, as the Board issued findings contrary to evidence and law, and CEMEX further explained why the alleged ULPs did not impact the outcome of election, as most of the alleged ULPs impacted only a few employees. (*E.g.*, CEMEX Br. 13-15, 21-22, 23-24, 30).

The GC contends this Court uses an abuse of discretion standard in evaluating election findings. (GC Br. 62). But the party seeking to set aside an election in the first instance (here, the Union, *not CEMEX*) also "carries a heavy burden." *See NLRB v. Advanced Sys.*, 681 F.2d 570, 575 (9th Cir. 1982). The GC mistakenly contends CEMEX "does not meaningfully contest" the Board's decision to set aside the election. (GC Br. 63). To the contrary, CEMEX discussed the (limited) dissemination of ULPs at length ((*E.g.*, CEMEX Br. 13-15, 21-22, 23-24, 30), which

---

*Legal Support Services*, 342 NLRB 350, 350 n.6 (2004); *St. Francis Hospital*, 263 NLRB 834, 835 (1982). Finally, access remedies are inappropriate when a union can otherwise access employees. *Lechmere Inc. v. NLRB*, 502 U.S. 527, 532 (1992). Here, the record reveals the Union was able to access CEMEX employees. (*E.g.*, GC Br. 8).

[10] The GC claims CEMEX did not substantively challenge various ULPs alleged against it other than to note CEMEX managers denied making unlawful statements. (GC Br. 18, 19, 21, 27-28). But the GC ignores the significance of CEMEX's concerns: even if the Board and courts defer to ALJ credibility determinations, the fact remains the Board's draconian order rests on disputed factual findings.

according to the Board (and GC) is supposed to be a relevant consideration in weighing whether to set aside an election. (GC Br. 62). The Board improperly ignored or minimized the mitigating factor of non-dissemination of the alleged ULPs, and the Court therefore should not enforce the decision to set aside the election.

## IV. CEMEX DID NOT VIOLATE THE NLRA WHEN IT DISCIPLINED AND TERMINATED ORNELAS MONTHS AFTER THE UNION LOST THE ELECTION

### A. Ornelas' Suspension Did Not Violate the NLRA

In its Opening Brief, CEMEX explained it suspended Ornelas for undisputed misconduct, consistently articulated its reason for Ornelas' suspension, and did not rely on the verbal warning she received. (CEMEX Br. 30-34). In response, the GC contends union activity motivated her suspension because she sought a Union organizer's help at a customer jobsite. (GC Br. 32). But as CEMEX explained, CEMEX primarily investigated Ornelas because she created a serious customer issue unrelated to the Union.[11] (CEMEX Br. 31-32).

The GC further contends CEMEX cannot carry its defense burden because it

___

[11] The GC contends CEMEX investigated Ornelas because a customer complained about the presence of a union organizer (GC Br. 34), but it is unclear why it was unlawful for CEMEX to investigate such a customer complaint; union organizers have no general right to access the private property of employers they are trying to organize (much less the private property of their customers). *See Lechmere, Inc.*, 502 U.S. at 532, 540-41.

relied on the verbal warning it previously issued to Ornelas. (GC Br. 32). But as CEMEX explained, the record does not reflect CEMEX relied on the verbal warning, and the GC has not pointed to any record evidence showing otherwise. (CEMEX Br. 33). Instead, the GC fixates on Ornelas' 2019 discipline, but the record reflects Ornelas also received discipline in 2018. (GC Br. 33; 3-ER-464, 465). The GC further contends CEMEX cannot meet its defense burden because it did not consistently explain its decision to suspend Ornelas, but to the contrary, CEMEX did explain its reasons consistently. (CEMEX Br. 32-33). Accordingly, the Court should not enforce the Board's finding CEMEX violated the NLRA by suspending Ornelas.

## B. Ornelas' Termination Did Not Violate the NLRA

In CEMEX's Opening Brief, CEMEX explained it terminated Ornelas for grossly insubordinate conduct that violated a local ordinance,[12] after the Company provided Ornelas with progressive discipline, including the suspension noted above and a training. Moreover, the termination was too remote in time from her Union activity to support a connection between protected activity and her termination. (CEMEX Br. 34-37). The GC contends Ornelas caused no "serious harm" and

---

[12] Specifically, Ornelas disregarded her work schedule by intentionally reporting to the wrong plant, clocking in 69 minutes early, and driving a Company mixer truck from the Oxnard plant to the Moorpark plant (40-minute drive) without permission. (3-ER-447; 2-ER-463; 2-ER-351-352).

complied with a local ordinance. (GC Br. 35). But the Board's role is not to speculate about whether it thinks discipline was warranted: "the Board does not substitute its own business judgment for that of the employer in evaluating whether conduct was unlawfully motivated." *E.g.*, *Framan Mechanical Inc.*, 343 NLRB 408, 416-17 (2004). In any event, the GC admits Ornelas acted insubordinately. (GC Br. 34). Furthermore, the ALJ explicitly acknowledged that Ornelas's insubordinate actions warranted discharge when he stated as follows: "Because the five Oxnard based drivers decided to take their trucks and deadhead to Moorpark without authorization, Respondent would have been within its right to fire all five drivers." (1-ER-114).

The GC further contends CEMEX was wrong to say organizing activity had ended by the time CEMEX terminated Ornelas. (GC Br. 35). But CEMEX said no such thing: it merely observed Ornelas' termination did not closely follow her election-related organizing activity. (CEMEX Br. 37). The GC also contends CEMEX cannot satisfy its defense burden because Ornelas' suspension and warning were unlawful (GC Br. 35-36) but as CEMEX has explained, CEMEX did not rely on the warning and the suspension was not unlawful (CEMEX Br. 30-34). The GC further argues CEMEX cannot satisfy its defense burden because it engaged in disparate treatment (GC Br. 36), but these offenses were not the same, and the presence of minor disciplinary differences does not prevent CEMEX from meeting its burden, *see Mid-Mountain Foods, Inc.*, 350 NLRB 742, 743 (2007) (termination

13

lawful even though record revealed "some inconsistencies in [the employer's] administration of discipline").

Finally, the GC faults CEMEX for mentioning misconduct for which Ornelas did not receive discipline and again suggests she does not agree with CEMEX's assessment of Ornelas' conduct. (GC Br. 36). But again, the Board's role is not to substitute its business judgment for CEMEX's. And as CEMEX has explained, that Ornelas did not receive discipline for all her misconduct does not reveal pretext; it shows she received an extra opportunity to improve but failed to do so. (CEMEX Br. 34-35). Accordingly, the Court should not enforce the finding Ornelas' discharge was unlawful.

## V.       THE BOARD IMPROPERLY IMPOSED COMPENSATORY DAMAGES NOT AUTHORIZED BY THE ACT.

In its Opening Brief, CEMEX explained the Board's order to compensate Ornelas for "all direct or foreseeable pecuniary harms" departs from longstanding precedent and violates both Section 10(c) of the NLRA and the Seventh Amendment of the U.S. Constitution. (CEMEX Br. 62-64, criticizing the Board's untested new compensation standard in *Thryv, Inc*., 372 NLRB No. 22 (2022), *pet. for review pending*, 5th Cir.)).

In response, the GC contends CEMEX did not properly raise the argument in its Opening Brief because CEMEX's discussion was "cursory," citing *Indep. Towers*

14

*of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003). (GC Br. 68). But there, the Court faulted a party for claiming preemption applied to various regulations when it "[b]y and large" declined to "mak[e] an argument" or "point[] the court to a claimed basis for preemption." *See Indep. Towers*, 350 F.3d at 929. In contrast, CEMEX explained why the Board's order here violated the NLRA and the Seventh Amendment, citing specific cases and statutory provisions. (CEMEX Br. 62-64). The GC next contends CEMEX cannot show *Thryv* is an abuse of the Board's discretion, citing *NLRB v. Ampersand Publ'g, LLC.*, 43 F.4th 1233 (9th Cir. 2022). (GC Br. 68-69). But in *Ampersand*, this Court recognized the Board may not award what is "primarily [a] compensatory remedy,"[13] *see id.* at 1238, as it did here. The GC further contends CEMEX is wrong to say courts have rejected the Board's new remedy in *Thryv* (GC Br. 68-69), but the GC is incorrect: courts conclude the NLRA authorizes equitable (rather than compensatory) relief.[14]

The GC contends CEMEX erred in relying on *UAW-CIO v. Russell*, 356 U.S.

---

[13] The GC appears to claim orders to compensate for "direct or foreseeable pecuniary harms" are not damages, citing *Thryv* and *Va. Elec. Power Co. v. NLRB*, 319 U.S. 533 (1943). (GC Br. 68-69). But the remedy the Board seeks goes beyond the make whole relief *Va. Elec. Power* authorizes, *see* 319 U.S. at 543-44, and constitutes compensatory damages, *see State Farm v. Campbell*, 538 U.S. 408, 416 (2003) (citation omitted).

[14] *E.g., Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (comparing cease and desist orders to injunctive relief); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 178 n.4 (1973) (comparing order requiring affirmative action to an injunction).

634 (1958) and *United States v. Burke*, 504 U.S. 229 (1992) (GC Br. 69), but again the GC is wrong. The GC claims *UAW-CIO* merely stands for the assertion that the Board was not the "sole entity" (GC Br. 69) that could award compensatory damages, but the Court was explicit that Congress did not authorize the Board to award "full compensatory damages." *See UAW-CIO*, 356 U.S. At 642-43. As for the GC's claim that *Burke* addresses Title VII, the Supreme Court viewed the remedial language of Title VII and the NLRA as comparable and concluded Title VII's remedial provision did not authorize compensatory damages. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 849 (2001); *Burke*, 504 U.S. at 238.

The GC finally contends CEMEX is wrong to say *Thryv* violates the Seventh Amendment, citing *Virginia Electric*, *NLRB v. Jones & Laughlin Corp.*, 301 U.S. 1 (1937), and *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977). (GC Br. 69-70). But *Virginia Electric* and *Atlas Roofing* deal with public rights, in contrast to *Thryv*'s new remedy, which implicates private rights. *See Va. Elec.*, 319 U.S. at 543; *Atlas*, 430 U.S. at 458. And *Jones & Laughlin* dealt with an order for reinstatement and backpay, not damages. *See* 301 U.S. at 48. Accordingly, the Court should not enforce the Board's compensatory damages order.

16

**VI.      THE BOARD'S *GISSEL* BARGAINING ORDER REMAINS CONTRARY TO *GISSEL***

In its Opening Brief, CEMEX argued that even if it had committed ULPs as alleged, the ULPs at issue did not warrant a bargaining order. (CEMEX Br. 37-48). The Administrative Law Judge agreed and declined to issue a *Gissel* bargaining order (ALJD 114-15), calling into question the Board's unjustified departure from the ALJ's remedy. *See Universal Camera Corp v. NLRB,* 340 U.S. 474, 496 (1951) ("[E]vidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's."); *Gardner Mech. Servs. v. NLRB*, 115 F. 3d 636, 643 (9th Cir. 1997) (rejecting bargaining order substituted by the Board for the ALJ's remedy); *see also Int'l Union v. NLRB*, 834 F.2d 816, 819 (9th Cir. 1987).

In response, the GC contends CEMEX violated the NLRA by refusing to recognize the Union and committing enough ULPs to render a fair and free rerun election unlikely. (GC Br. 64). But the GC incorrectly restates the *Gissel* standard, 395 U.S. at 609; and the GC's brief acknowledges that the Board's *Gissel* bargaining order here did not result from a failure by CEMEX to recognize the Union. (GC Br. 59).

The GC's analysis regarding the likelihood of a free and fair rerun election is

17

no more compelling. The GC faults CEMEX (and by extension, the ALJ) for focusing on the extent of dissemination of ULPs (GC Br. 66); yet the Board *agreed* that lack of dissemination is a relevant consideration, only to ignore its own standard. (GC Br. 64). The GC contends CEMEX engaged in hallmark violations[15] and employed a corporate strategy to oppose unionization, but lack of pervasiveness (dissemination of the ULPs) is still key: hallmark violations that are not widely disseminated do not typically justify bargaining orders.[16] (CEMEX Br. 43).

As is undisputed in the record, and CEMEX's opening brief, the voting unit here consisted of 369 eligible voters spread across 25 plants over hundreds of miles in two different states. No ULPs were found by the ALJ (or even alleged) at many of the 25 plants. Furthermore, there was no evidence that many, if any, of the voting unit employees were aware of the ULPs alleged to have occurred at other plants outside their home market.

Despite the GC's conclusory statement to the contrary (GC Br. 66), the record

---

[15] The Union's claim that CEMEX committed additional ULPs was properly rejected by the Board. But even if additional ULPs had been accepted by the Board, a *Gissel* bargaining order would still be unwarranted, because none of the Union's additional alleged ULPs describe hallmark violations. (*See* U. Br. 3).

[16] The GC faults CEMEX for relying on *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208 (2d Cir. 1980) because no hallmark violations occurred in that case. (GC Br. 66). Nevertheless, the court there explained "even with respect to these 'hallmark' violations, a bargaining order may be denied for lack of proof of pervasiveness." *See Jamaica*, 632 F.2d at 213.

18

lacks evidence demonstrating ULPs were "widely disseminated" among the 369 unit employees. The primary "evidence" of dissemination was the testimony of lead Union organizer, Scott Williams, who stated Ornelas's discharge (which occurred *six months after the election*) was a topic of conversation among some of the drivers with whom he interacted. (1-SER-102-03). However, Williams failed to identify any employees by name who discussed Ornelas's discharge with him. Moreover, neither the General Counsel nor the Union called as witnesses any employees who worked outside of Ornelas's home market in Ventura County who were aware of her discharge. Ultimately, no record evidence demonstrates that any of the 331 unit employees outside of Ventura County were aware of Ornelas' discharge.

The ALJ properly concluded the occurrence of ULPs was not widely disseminated among the 369 unit employees working at the 25 plants. The Board's decision to disregard the ALJ's conclusion and issue a *Gissel* bargaining order, despite the clear lack of dissemination, was not supported by substantial evidence in the record and should be overturned. *Universal Camera Corp v. NLRB,* 340 U.S. at 496; *Gardner Mech. v. NLRB*, 115 F.3d at 648.

CEMEX also argued the Board did not adequately explain why traditional remedies were insufficient. (CEMEX Br. 44-45). The GC does not meaningfully respond—rather, the GC's brief reiterates the Board's speculative concerns about

rerun voters feeling coerced and CEMEX committing more ULPs in the future.[17] (GC Br. 64). CEMEX further argued the Board erroneously failed to consider mitigating factors.[18] (CEMEX Br. 45-48). The GC contends this Court does not consider delays as a mitigating factor; but *NLRB v. Bakers of Paris*, 929 F.2d 1427, 1448 (9th Cir. 1991), which the GC cites (GC Br. 67), reveals this Court has considered changed circumstances.[19] *See Bakers*, 929 F.2d at 1448. Accordingly, the Court should not enforce the *Gissel* bargaining order.

### VII. THE BOARD IMPROPERLY ANNOUNCED AND RETROACTIVELY APPLIED AN UNWORKABLE NEW STANDARD THAT UNLAWFULLY IMPOSES PETITION REQUIREMENTS AND BARGAINING ORDERS ON EMPLOYERS

In its Opening Brief, CEMEX explained why the Board's new election standard, announced for the first time in this case, violates the NLRA and APA.

---

[17] Consistent with *NLRB v. Western Drug*, 600 F.2d 1324, 1326 (9th Cir. 1979), the Court should reject the Board's "perfunctory" analysis. The GC contends *Western Drug* is distinguishable and *NLRB v. Davis*, 642 F.2d 350 (9th Cir. 1981) "undermines" CEMEX's argument (GC Br. 66), but *Davis* also explained the Board's discussion of a bargaining order "may not be perfunctory." *See Davis*, 642 F.2d at 354.

[18] The GC contends CEMEX "ignores" and "waived" a response to the Board's discussion of changed circumstances (GC Br. 67); but CEMEX in fact addressed changed circumstances in its opening brief (CEMEX Br. 45-48).

[19] Although *NLRB v. Peninsula Ass'n*, 627 F.2d 202 (9th Cir. 1980) dealt with circumstances that changed before an election (GC Br. 67), the case nevertheless shows changed circumstances remain relevant to evaluating the propriety of a *Gissel* bargaining order in this Circuit.

(CEMEX Br. 49-62). The GC, the Union, and their *amici* wrongly contend the new standard is somehow consistent with the NLRA, attempting to cast the Board's new standard as a policy choice deserving of judicial deference. (GC Br. 44-49). "[B]ut the [NLRA's] provisions are not indefinitely elastic, content-free forms to be shaped in whatever manner the Board might think best conforms to the proper balance of bargaining power." *See Am. Ship Bldg. v. NLRB*, 380 U.S. 300, 310 (1965). The Board may not enact a policy that "contradict[s] both the text and structure" of the NLRA, regardless of the merits of the policy choice. *See NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 721 (2001). Further, although this Court is "mindful of the 'considerable deference' we must accord Board rules...[i]t is also a well-established principle of administrative law...that an agency must promulgate its rules through reasoned decision making." *See Local Joint Exec. Bd. of Las Vegas v. NLRB*, 309 F.3d 578, 585 (9th Cir. 2002).

### A.   The New Standard Violates the NLRA

#### 1.   The New Standard Violates *Gissel*

In its Opening Brief, CEMEX described how the new standard violates the Supreme Court's *Gissel* decision. The Board's attempts to claim otherwise are disingenuous and fatally flawed. (CEMEX Br. 54-55, 58-61). In response, the GC falsely contends elections somehow remain "preferred" over card checks under the new standard, and the GC's brief focuses on whether an employer's conduct makes

a "timely" election less reliable than card check. (GC Br. 52). But the GC's focus on timeliness reveals the new standard's clear contradiction with the NLRA and *Gissel*: The purpose of the NLRA is not to resolve representation questions as quickly as possible; the purpose is to ensure employees can fairly choose or *decline* union representation. (*See* 1-ER-58).

Relatedly, the Supreme Court in *Gissel* described elections as the best way to assess union majority support *without* the Board's new caveat that elections must happen immediately. *See Gissel*, 395 U.S. 575, 602-03 (1969). Further, *Gissel*'s finding that cards can be more effective than elections following employer misconduct does not apply to situations under the new standard where no election can occur because an employer missed an arbitrary two-week deadline to file an election petition.

The GC contends *Gissel* does not stop the Board from issuing its new standard because "[a]t no point" did the *Gissel* Court "suggest that the Board's approach represented the only permissible construction of the NLRA." (GC Br. 54). But the Supreme Court expressly disallowed the Board from issuing bargaining orders that fail to "effectuat[e] ascertainable employee free choice," which the Board's new standard plainly fails to do. *Gissel*, 395 U.S. at 614. *Gissel* further explained "minor or less extensive [ULPs]...*will not sustain a bargaining order*," thereby preempting

22

the Board's new standard, which allows minor ULPs to sustain a bargaining order.[20] *See id.* at 615 (emphasis added).

### 2.    The New Standard Violates *Linden Lumber*

In its Opening Brief, CEMEX further demonstrated that the Board's new standard is inconsistent with *Linden Lumber*, where the Supreme Court explained "[t]here is no suggestion that Congress wanted to place the burden of getting a secret election on the employer." (CEMEX Br. 55-58) (quoting *Linden Lumber Div., Sumner & Co. v. NLRB*, 419 U.S. 301, 306-09 (1974)). The GC does not meaningfully engage with the plain language of *Linden Lumber*; instead, the GC's brief contends the new standard is lawful because *Linden Lumber* allowed the Board to place the burden to file an election petition on a union, not that it had to. (GC Br. 56-57). The GC also claims the dissent in *Linden Lumber* would have approved the Board's new framework. (GC Br. 57). But this Court has no authority to overrule Supreme Court precedent in favor of a dissenting opinion, and neither does the Board.

The GC further contends CEMEX's claims are "irrelevant" because the Board

---

[20] The GC contends minor ULPs will not result in a bargaining order, criticizing the dissent's concerns as "unfounded hypotheticals." (GC Br. 55). But the dissent cited specific cases where the Board concluded minor ULPs warrant setting aside an election. (CEMEX Br. 59). That the Board will continue setting aside elections (and now, issuing bargaining orders) due to minor ULPs follows from Board precedent. (*See* 1-ER-55).

23

did not issue a bargaining order due to the failure of CEMEX to file an election petition. (GC Br. 56). But the GC misses the point: The Board asserted and conceded that it was applying its new standard in this case. The GC's *post hoc* rationalization cannot overrule the Board's actual holding. CEMEX remains entitled to challenge the Board's new standard, because the Board asserted the new standard applied to CEMEX's conduct and on that ground unlawfully ordered CEMEX to recognize and bargain with the Union notwithstanding the votes of a majority of CEMEX's employees.

### B. The Board Erred in Overruling Its Decision in *Linden Lumber*

In its Opening Brief, CEMEX explained why the Board erred when it failed to present a reasoned explanation for overruling its decision in *Linden Lumber*: The Board did not identify data or record evidence supporting its decision and further erred in framing its decision to overrule *Linden Lumber* as remedial. (CEMEX Br. 55-58). In response, the GC contends the Board issued its new standard through "careful consideration" and restates the Board's rationale for its new standard, mostly relying on cases the Board cited in its decision about the harm of delays on union representation. (GC Br. 45-46).

But the Board's discussion of its new standard was not a reasoned explanation. (CEMEX Br. 56-58). None of the additional cases the GC cites justify the Board's overruling of *Linden Lumber* either. For example, the GC cites *Frankl v. HTH Corp.*,

24

650 F.3d 1334 (9th Cir. 2011) for the assertion that delayed recognition and bargaining can result in lost interest in unionization (GC Br. 45-46). But there, this Court affirmed the district court's order of injunctive relief, revealing the Board already had a mechanism for combating delay. *See Frankl*, 650 F.3d at 1339; (CEMEX Br. 56-58). The GC cites to *NLRB v. L.B. Foster Co.*, 418 F.2d 1 (9th Cir. 1969) for the assertion delays frustrate employees' preference, but there, the Court enforced a bargaining order, revealing again that current law responds to concerns about delays.[21] *See id.* at 5. The GC further cites *NLRB v. CAM Indus. Inc.*, 666 F.2d 411 (9th Cir. 1969), but there, the Ninth Circuit simply explained it is appropriate to avoid delay by allowing a union affiliate to act even if authorization cards designate the union parent organization—a statement of law not at issue here. *See id.* at 413. Accordingly, the Board's decision to overrule its decision in *Linden Lumber* was arbitrary and capricious and the Court should not enforce the new standard.

### C.    The Major Questions Doctrine Precludes the New Standard

In its Opening Brief, CEMEX explained the Board erred in issuing its new standard, as the Board cannot point to clear congressional authorization. (CEMEX Br. 50-52). In response, the GC points to the Board's Order Denying

---

[21] That the Board has sometimes been reluctant to issue bargaining orders due to the passage of time compels no different result. (*Contra* GC. Br. 47). The reluctance merely reflects avoiding election delays are not the only relevant consideration before the Board. (*See* CEMEX Br. 60-61).

Reconsideration and the Supreme Court's holding in *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014), and claims the major questions doctrine is "plainly inapposite." (GC Br. 49). But neither the Board's nor the GC's analysis supports that claim. To the contrary, both the Board and the GC cite to similar cases where the Supreme Court has found the major questions doctrine to apply. *See Util. Air. Regulatory Grp.*, 573 U.S. at 324; (1-ER-3) (quoting *West Virginia v. EPA*, 142 S. Ct. 2587 (2022)).

The GC further contends the major questions doctrine does not apply because the new standard is just a modification of Board remedial authority. (GC Br. 49). But the new standard is not merely remedial (CEMEX Br. 58), and even if it was, the Board has still upended an election and bargaining standard that was in place for over 50 years, substituting a wholly new standard that regulates a "significant portion of the American economy," i.e., "most private sector employers."[22] *See Util. Air Regulatory Grp.*, 573 U.S. at 324 (internal citations omitted). Accordingly, the Court should not enforce the new standard. [23]

---

[22] According to the Board's own website, "[t]he NLRA applies to most private sector employers, including manufacturers, retailers, private universities, and health care facilities." *See Frequently Asked Questions- NLRB*, NLRB, Frequently Asked Questions - NLRB | National Labor Relations Board (last visited May 5, 2024).

[23] The GC further argues even if the major questions doctrine applies, the NLRA still authorizes the Board's new standard, citing the Board's order denying reconsideration. (GC Br. 50). But the Board's new standard is not consistent with the NLRA. (CEMEX Br. 49-61).

26

### D. The Board Improperly Engaged in Rulemaking Under the Guise of Adjudication

In its Opening Brief, CEMEX explained that the Board improperly announced its unprecedented new bargaining standard through adjudication rather than rulemaking. This is so because the Board's new standard imposes severe consequences on regulated businesses without pointing to record evidence justifying the new standard. (CEMEX Br. 52-54). In response, the GC contends the new standard involves "case-specific determinations" not amenable to rulemaking, reiterating the Board's arguments. (GC Br. 50). [24] But the GC does not explain why rulemaking is inappropriate here. (*Id.*). The GC further claims the Supreme Court has allowed the Board to proceed through adjudication rather than rulemaking in *Linden Lumber* and *Gissel* (GC Br. 51), but those decisions do not indicate that any party challenged the Board's decision to use adjudication to achieve what were relatively incremental changes in policy, compared to the drastic changes embodied

---

[24] The GC cites *NLRB v. Bell Aerospace Co.*, 416 U.S. 267 (1974) (GC Br. 50), which CEMEX has already addressed in its Opening Brief. (CEMEX Br. 52-53). The GC further cites to *NLRB v. St. Francis Hosp. of Lynwood*, 601 F.2d 404 (9th Cir. 1979) for its assertion that adjudication was somehow appropriate here, but there the Board merely used adjudication (rather than rulemaking) to categorize types of bargaining units in the non-profit hospital context, which is nothing like the Board's far-reaching new standard here. *St. Francis*, 601 F.2d at 413-14. Similarly, the GC also cites *U.S. Ecology, Inc.*, 772 F.2d 1478 (9th Cir. 1985) for the assertion the Board may proceed through adjudication in the election context, but again, the Board used adjudication to clarify certain election conduct relating to intervention, not to change the entire process through which union elections proceed. *See id.* at 1482.

27

in the Board's new petitioning/bargaining policy.

The Board should also have used rulemaking here because the newly announced standard did not apply by its terms to CEMEX: As CEMEX has noted, the record does not reveal the Union ever requested voluntary recognition. (CEMEX Br. 61). In response, the GC claims otherwise, arguing it is "unambiguous" the Union was "claim[ing] to represent" the unit drivers. (GC Br. 61). But as Board Member Marvin Kaplan explained in dissenting from the Board's Order Denying Reconsideration, the NLRA distinguishes between claims to *represent* employees and claims for *recognition*. (1-ER-6).

### E.   The Board Erred in Applying Its New Standard Retroactively[25]

In its Opening Brief, CEMEX explained the Board erred in applying its new standard retroactively to CEMEX because the basis for its new standard was unsupported by record evidence. (CEMEX Br. 61-62). CEMEX also explained retroactive application was inappropriate under this Court's analysis. (*Id.*). In response, the GC contends the Court defers to the Board's manifest injustice analysis so long as the Board's explanation is reasonable, citing *Beneli v. NLRB*, 873 F.3d 1094 (9th Cir. 2017). (GC Br. 58). But there, the Court concluded "the balance

---

[25] Contrary to the GC (GC Br. 58), CEMEX properly raised its retroactivity concerns in its Opening Brief, as it explicitly raised concerns about retroactivity and the Board's manifest injustice analysis (CEMEX Br. 61-62).

tip[ped] in favor of prospective application of the new standard" at issue. *See id.* at 1099. The GC further contends retroactive application is proper under the factors this Court uses to evaluate retroactivity (GC Br. 58-59), but the Board never considered this Court's factors, so the GC may not now. *See Construction Erectors, Inc. v. NLRB*, 661 F.2d 801, 804-05 (9th Cir. 1981). Regardless, this Court's factors favor prospective application: the new standard is an abrupt departure from precedent, CEMEX relied on preexisting law, and retroactive application severely burdens CEMEX;[26] accordingly, prospective application is appropriate here and the Board erred in finding otherwise.

## CONCLUSION

For the reasons set forth above and further discussed in CEMEX's Opening Brief and the *amici* briefs in support of CEMEX, this Court should decline to enforce the Board's Order and instead should vacate the Order in its entirety.

---

[26] The GC claims retroactive application does not burden CEMEX because a *Gissel* bargaining order was warranted regardless of the new standard (GC Br. 59) but as CEMEX has explained, the record here did not warrant a *Gissel* bargaining order (CEMEX Br. 37-48). The GC further cites *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717 (9th Cir. 2018), *Gissel*, and *NLRB v. Buckley Broad. Corp. of Cal.*, 891 F.2d 230 (9th Cir. 1989) to argue for retroactive relief (GC Br. 59-60) but none of those cases discuss the Ninth Circuit's manifest injustice analysis.

29

Respectfully submitted,

Ross M. Gardner
Alan M. Bayless Feldman
Ross.gardner@jacksonlewis.com
Alan.feldman@jacksonlewis.com
JACKSON LEWIS, P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Telephone: 402.391.1991
Facsimile: 402.391.7363

*Attorneys for Petitioner/Cross-Respondent CEMEX Construction Materials Pacific, LLC*

*/s/Maurice Baskin*
Maurice Baskin
mbaskin@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W., Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011

John Harper III
ajharper@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney St., Suite 1900
Houston, Texas 77010
Telephone: 713.951.9400

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Court's Form 8 is being submitted reflecting that the attached Petitioner's opening brief is proportionately spaced, has a typeface of 14 points, and contains 7,261 words, excluding the parts exempted by FRAP 32(f), which is based upon the word count of the word processing system used to prepare this brief.

*/s/Maurice Baskin*

30

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 20, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated this 20th day of May, 2024.

*/s/Maurice Baskin*

31

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-2081, 23-2302, 23-2377

I am the attorney or self-represented party.

**This brief contains** | 7,261 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.

    ☒ a party or parties are filing a single brief in response to multiple briefs.

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Maurice Baskin | **Date** | 05/20/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                    *Rev. 12/01/22*